## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| GWYNETH GILBERT, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LANDS' END, INC.<br><br>Defendant. | Civil Action No. 3:19-cv-823-JDP |
| STEPHANIE ANDREWS, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LANDS' END, INC. and LANDS' END OUTFITTERS, INC.<br><br>Defendants. | Consolidated Action |

## SECOND AMENDED COMPLAINT

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 3

PARTIES ............................................................................................................... 5

- *Plaintiffs/Class Representatives* .................................................. 5
- *Defendants* ...................................................................................... 8

JURISDICTION & VENUE .................................................................................. 8

FACTUAL BACKGROUND ................................................................................. 8

- *Lands' End Provides New Uniforms to Delta* ............................... 8
- *Delta Employees Experience Adverse Health Reactions* ............. 9
- *The NIOSH Report on the Uniforms* ............................................. 10
- *Plaintiffs' Testing of the Uniforms* .............................................. 11

CAUSES OF ACTION ........................................................................................ 12

- **COUNT 1 – NEGLIGENCE** ........................................................ 12
- **COUNT 2 – STRICT DESIGN DEFECT** .................................... 13
- **COUNT 3 – MANUFACTURING DEFECT** ................................ 14
- **COUNT 4 – FAILURE TO WARN** .............................................. 15
- **COUNT 5 – BREACH OF EXPRESS WARRANTY** .................... 16
- **COUNT 6 – BREACH OF IMPLIED WARRANTY** .................... 17
- **COUNT 7 – VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT ("MMWA")** ............................................................. 18
- **COUNT 8 -- INJUNCTIVE RELIEF** ........................................... 19

CLASS ALLEGATIONS ..................................................................................... 20

DEMAND FOR JURY TRIAL ........................................................................... 23

PRAYER FOR RELIEF ....................................................................................... 23

SECOND AMENDED APPENDIX A ................................................................. 25

**COME NOW** Plaintiffs who file this Complaint against defendants Lands' End, Inc. and Lands' End Outfitters, Inc. and allege as follows:

### INTRODUCTION

1.      Plaintiffs are employees of Delta Airlines Lines, Inc. ("Delta"). They and their co-workers ("Delta Employees") work in various capacities, including as flight attendants; airport customer service employees, ramp and gate agents; Sky Club employees; delta cargo employees; GSE Maintenance employees; and Delta TechOps employees.

2.      Since May 29, 2018, the Delta Employees have been required to wear newly-issued work uniforms ("Uniforms") manufactured by Lands' End, Inc. and Lands' End Business Outfitters (hereinafter collectively referred to as "Lands' End" or "Defendants").

3.      These Uniforms are high stretch, wrinkle and stain-resistant, waterproof, anti-static, and deodorizing. Lands' End used various chemical additives and finishes to achieve these characteristics.

4.      The combination of these additives and finishes has an allergic and sensitizing effect on the human body, even if those additives and finishes are relatively safe in their individual respective quantities.

5.      Since the introduction of the Uniforms, Plaintiffs and many other Delta Employees have suffered a myriad of health problems as a result of the excessive allergen and sensitizing properties in the Uniforms. These problems most commonly include the following:

a.      Respiratory – severe respiratory distress, vocal cord dysfunction, breathing difficulties, shortness of breath, coughing, tightness of chest;

b.      Skin – contact dermatitis, skin blisters, skin rashes, boils, hives, bruising, eczema, scarring, hair loss, hair follicle inflammation;

c.       Eyes, Ears, Nose and Throat – blurred vision, dry eyes, nosebleeds, ringing ears, sinus problems; and

d.       Head and General – migraines, headaches, fatigue, muscle weakness, anxiety, swollen lymph nodes, anaphylactic type symptoms and auto-immune conditions.

6.       Plaintiffs and other Delta Employees who had reactions to the Uniforms did not have these symptoms prior to the rollout of the Uniforms in such combination and to such degree, and it was only at and after the rollout that such symptoms appeared. These health problems were caused by the Uniforms and continue to this day.

7.       Plaintiffs bring eight causes of action – negligence, strict design defect, manufacturing defect, failure to warn, breach of express warranty, breach of implied warranty, violation of the Magnuson Moss Warranty Act, and injunctive relief.

8.       Plaintiffs seek damages for their personal injuries, pain and suffering, severe emotional distress, property damage, financial or economic loss, including medical services and expenses, lost income and other compensable injuries.

9.       Plaintiffs seek damages because the Uniforms are not colorfast and result in crocking and bleeding, staining the wearer and/or their possessions purple. The purple dye comes off on the wearer's skin, which can also then transfer to other items. The dyes in the fabric also "bleed" directly onto the wearer's clothes, sheets, towels and other items, and permanently stain their possessions.

10.       Plaintiffs also seek injunctive relief to require Lands' End to recall the Uniforms so that they do not present a continuing risk of toxic exposure. They also ask Lands' End to establish a monitoring program to periodically assess whether the Uniforms have or are adversely affecting their health so that timely and necessary treatment may be administered.

11.     A subset of the Plaintiffs – the Class Representatives, as defined below – also seek the certification of a sub-class resulting from crocking and bleeding and an injunctive class to require Defendants to recall the Uniforms and institute a medical monitoring program on behalf of the proposed:

      a.     Class: All Delta Employees, including flight attendants, gate agents and ramp agents employed by Delta in the United States who presently wear, previously wore, presently work or previously worked in the vicinity of the Passport Plum and red-colored Uniforms manufactured by Lands' End.

      b.     Crocking sub-class: All Delta Employees, including flight attendants, gate agents and ramp agents employed by Delta in the United States who have experienced the bleeding of colors and/or crocking from the Lands' End Uniforms onto their skin, accessories, other garments or furnishings resulting in property damage.

12.     The Uniforms pose ongoing and unreasonable risks of physical harm to the Class, including threatening the Class members with future serious health problems because of an allergic and/or sensitization response. The unreasonable risks to the Class can be ameliorated or prevented through a robust monitoring program.

## PARTIES

### *Plaintiffs/Class Representatives*

13.     Plaintiff Stephanie Andrews, a Delta Employee and flight attendant, is a resident and citizen of Texas and is currently domiciled in Alvin, Texas. For purposes of 28 U.S.C. § 1332, she is a citizen of Texas. As a result of her exposure to the Uniforms, she suffers from asthma, vocal cord dysfunction, breathing difficulties, shortness of breath, coughing, tightness of chest, contact dermatitis, skin rashes, hives, hair loss, heart palpitations, fatigue, and auto-immune conditions.

14.     Plaintiff Janelle Austin, a Delta Employee and flight attendant, is a resident and citizen of Georgia and is currently domiciled in Atlanta, Georgia. For purposes of 28 U.S.C. § 1332, she is a citizen of Georgia. As a result of her exposure to the Uniforms, she suffers from hair loss, skin irritation, rashes, itchiness, difficulty breathing, fatigue, headaches, eye irritation and sinus irritation.

15.     Plaintiff Phyllis Heffelfinger, a Delta Employee and flight attendant, is a resident and citizen of Ohio and is currently domiciled in Loudonville, Ohio. For purposes of 28 U.S.C. § 1332, she is a citizen of Ohio. As a result of her exposure to the Uniforms, she suffers from chest pain and difficulty breathing.

16.     Plaintiff Kelli Heist, a Delta Employee and gate agent, is a resident and citizen of Florida and is currently domiciled in Clearwater, Florida. For purposes of 28 U.S.C. § 1332, she is a citizen of Florida. As a result of her exposure to the Uniforms, she suffers from itchiness, coughing, fatigue, headaches, rashes, hives and vocal cord dysfunction.

17.     Plaintiff Virginia Mathios, a Delta Employee and flight attendant, is a resident and citizen of Utah and is currently domiciled in Salt Lake City, Utah. For purposes of 28 U.S.C. § 1332, she is a citizen of Utah. As a result of her exposure to the Uniforms, she suffers from difficulty breathing, bloody urine, rashes, hives and vocal cord dysfunction.

18.     Plaintiff Janet Murphree, a Delta Employee and flight attendant, is a resident and citizen of Tennessee and is currently domiciled in Bolivar, Tennessee. For purposes of 28 U.S.C. § 1332, she is a citizen of Tennessee.  As a result of her exposure to the Uniforms, she suffers from skin irritation, rashes, difficulty breathing, fatigue, sinus irritation, headaches, throat irritation, coughing and itchiness.

19.     Plaintiff Dana Smith, a Delta Employee and flight attendant, is a resident and citizen of Texas and is currently domiciled in San Antonio, Texas. For purposes of 28 U.S.C. §

1332, Plaintiff, she is a citizen of Texas. As a result of her exposure to the Uniforms, she suffers from skin irritation, skin rashes, hair loss, headaches, blurred vision, difficulty breathing, vocal cord dysfunction, coughing, nasal drip, throat irritation and heart palpitations.

20.     Plaintiff Hope Tucker, a Delta Employee and flight attendant, is a resident and citizen of Washington and is currently domiciled in Liberty Lake, Washington. For purposes of 28 U.S.C. § 1332, she is a citizen of Washington. As a result of her exposure to the Uniforms, she suffers from difficulty breathing, vocal cord dysfunction, coughing, nasal drip, throat irritation and heart palpitations.  In addition, the garments would bleed purple dye onto her skin despite repeated washings in accordance with the laundering instructions, and caused crocking onto her undergarments, shirts, towels and other items.

21.     Plaintiff Lisa Uddin-Barneswright, a Delta Employee and flight attendant, is a resident and citizen of Georgia and is currently domiciled in Newnan, Georgia. For purposes of 28 U.S.C. § 1332, she is a citizen of Georgia. As a result of her exposure to the Uniforms, she suffers from skin irritation, itchiness, rashes, difficulty breathing, fatigue and hair loss.

22.     Plaintiff Michele Warner, a Delta Employee and flight attendant, is a resident and citizen of Minnesota and is currently domiciled in Gem Lake, Minnesota. For purposes of 28 U.S.C. § 1332, she is a citizen of Minnesota. As a result of her exposure to the Uniforms, she suffers from skin irritation, itchiness, rashes, vertigo, hair loss, fatigue, headaches, muscle cramps, swollen glands and vocal cord dysfunction.

23.     Plaintiff Lynda Valdez, a Delta Employee and flight attendant, is a resident and citizen of New York and is currently domiciled in Levittown, New York. For purposes of 28 U.S.C. § 1332, she is a citizen of New York. As a result of her exposure to the Uniforms, she suffers from skin irritation, rashes, itchiness, coughing and swollen lymph nodes.

24.     Plaintiffs Andrews, Austin, Heffelfinger, Heist, Mathios, Murphree, Smith, Tucker, Uddin-Barneswright, Warner, and Valdez are collectively referred to herein as "Class Representatives".

25.     Additional plaintiffs are included in the **Second Amended Appendix A**, and their respective allegations are expressly incorporated herein.

*Defendants*

26.     Defendant Lands' End, Inc. is a Delaware corporation with its principal place of business located at 1 Lands' End Lane, Dodgeville, Wisconsin 53595.

27.     Defendant Lands' End Business Outfitters, Inc. is a Delaware corporation with its principal place of business located at 1 Lands' End Way, Dodgeville, Wisconsin 53595.

28.     At all relevant times, Defendants were engaged in the business of manufacturing, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, selling and warranting Lands' End products, including the Uniforms manufactured for the Delta Employees.

**JURISDICTION & VENUE**

29.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331.

30.     Venue is proper in this judicial district as both Defendants reside in the State of Wisconsin and within this District. 28 U.S.C. §§ 1332(c)(i) & 1391(b)(1).

**FACTUAL BACKGROUND**

*Lands' End Provides New Uniforms to Delta*

31.     In 2016, Delta contracted with Lands' End to provide new employee Uniforms.

32.     The Uniforms are comprised of several garments, including dresses, skirts, shirts, blouses, sweaters, jackets and pants.

33.     Additional products which incorporated the design were also available, but had to be purchased by employees through Delta's employee website based in Atlanta, Georgia, which had a direct link to Lands' End for ordering.

34.     The Uniforms are described as high stretch, wrinkle and stain-resistant, waterproof, anti-static, and deodorizing. Various chemical additives and finishes were used during the manufacturing process to ensure these characteristics.

35.     On May 29, 2018, the Uniforms were officially launched and distributed to the Delta Employees.

36.     The Uniforms have been worn by approximately 64,000 Delta Employees, including 24,000 flight attendants and 40,000 airport customer service ticket and gate agents, Sky Club employees, airport customer service ramp agents, delta cargo employees, GSE Maintenance employees and Delta TechOps employees.

37.     Upon information and belief, Lands' End was aware of prior health problems experienced by flight attendants at Alaska Airlines and American Airlines caused by their uniforms.

38.     Upon information and belief, Delta made Lands' End aware of these problems during contract negotiations, and the uniform contract contains warranties and indemnities regarding the safety of the Uniforms.

39.     In the alterative, Lands' End should have been aware of these prior health problems experienced by flight attendants at Alaska Airlines and American Airlines because of their uniforms.

***Delta Employees Experience Adverse Health Reactions***

40.     At all times before May 29, 2018, Plaintiffs wore approved Delta uniforms while performing their occupational tasks. Their ability to perform their assigned duties was not

9

compromised by their uniforms prior to that date, and Plaintiffs did not experience adverse health issues from the previous uniforms.

41.     Shortly after the Uniforms were introduced, many Delta Employees began experiencing serious reactions, causing grave concern for their health. *See supra* at ¶ 5.

42.     Plaintiffs have complained of health problems as a result of wearing or merely being in proximity to these Uniforms.

43.     On August 30, 2019, Delta reported that "since launch, 1,900 of [its] 64,000 employees reported some type of concern" with the Uniforms. However, based upon information and belief, the number of injured Delta Employees is significantly higher as many do not report their symptoms and health scares to the company.

44.     Adverse reactions to the allergens and sensitizers in the Uniforms have resulted in a substantial increase in absences and grounding of Delta Employees.

45.     In addition to the foregoing, the Delta Employees' symptoms are serious enough that several flight attendants have been forced to leave their flights mid-trip, necessitating unscheduled returns.  Emergency medical care has been required either out of their home state or out of the country. During flights, flight attendants have experienced difficulty speaking and breathing.

46.     Many Delta Employees requested alternate uniforms from Defendants only to be provided another one of the same Uniforms that caused the original adverse health effects.

***The NIOSH Report on the Uniforms***

47.     On June 26, 2019, after receiving dozens of complaints from Delta Employees, the National Institute of Occupational Safe and Health ("NIOSH") issued a Health Hazard Evaluation Report ("NIOSH Report") concerning the Uniforms Delta employees were required to wear. A copy of the NIOSH Report is attached here to as **Exhibit A**.

48.     The NIOSH concluded: "It is possible that textile chemicals in the uniforms or the physical irritant properties of the uniform fabrics have caused skin symptoms among Delta employees." Exhibit A, p. 7.

49.     The NIOSH Report recommended that Delta "[c]ontinue to offer alternatives to the new uniform to employees who have developed symptoms and/or health effects related to wearing the new Uniforms. Allow employees to use alternative Uniforms on a long term basis, if symptoms resolve with the alterative." *Id.*, p. 9.

***Plaintiffs' Testing of the Uniforms***

50.     Plaintiffs have conducted their own preliminary investigative testing of samples of the Uniforms. These tests revealed the presence of chemicals and heavy metals far in excess of industry-accepted safe levels for garments.

51.     These chemicals and heavy metals include the following, and are known to cause significant reactions and adverse health conditions:

       a.      Chromium – harmful to the skin, eyes, blood, and respiratory system;

       b.      Antimony – harmful to the eyes and skin; causes hair loss;

       c.      Mercury – at high vapor concentrations, it can cause quick and severe lung damage; at low vapor concentrations over an extended period of time, it can cause neurological disturbances, memory problems, skin rash, and kidney abnormalities; it can pass from a mother to her baby through the placenta during pregnancy and through breast milk after birth;

       d.      Formaldehyde – can cause skin, throat, lungs, and eye irritation; repeated exposure can cause cancer;

       e.      Fluorine – can cause eye irritation; harmful to kidneys, teeth, bones, nerves and muscles; and

f.      Bromine – can cause skin, mucous membrane, and tissue irritation.

**CAUSES OF ACTION**
**COUNT 1 – NEGLIGENCE**

52.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

53.     Defendants owe a duty to individuals, including Plaintiffs, to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing and selling the Uniforms.

54.     Defendants were negligent in failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing and selling the Uniforms. Defendant breached their aforementioned duty by:

a.      Failing to design the Uniforms so as to avoid an unreasonable risk of harm to Delta Employees, including the Plaintiffs, who wore the Uniforms and brought them into their homes;

b.      Failing to use reasonable care in the testing of the Uniforms so as to avoid an unreasonable risk of harm to Delta Employees, including the Plaintiffs, who wore the Uniforms and brought them into their homes;

c.      Failing to use reasonable care in inspecting the Uniforms so as to avoid an unreasonable risk of harm to Delta Employees, including the Plaintiffs, who wore the Uniforms and brought them into their homes;

d.      Failing to use reasonable care in collecting and/or analyzing adverse event reports prepared by Delta Employees regarding the Uniforms so as to avoid an unreasonable risk of harm to Delta Employees, including the Plaintiffs, who wore the Uniforms and brought them into their homes; and

e.      Otherwise negligently or carelessly developed, manufactured, promoted, packaged, marketed, distributed and sold the Uniforms so as to avoid an unreasonable risk of harm to Delta Employees, including the Plaintiffs, who wore the Uniforms and brought them into their homes.

55.     As a direct and proximate result of Lands' End's negligence, Plaintiffs have suffered and/or in the future will suffer personal injuries, pain and suffering, severe emotional distress, property damage, financial or economic loss, including medical services and expenses, lost income and other damages.

### COUNT 2 – STRICT DESIGN DEFECT

56.     Plaintiffs, incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

57.     At all times material to this action, Defendants were responsible for designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing and selling the Uniforms.

58.     The Uniforms are defective and unreasonably dangerous to Plaintiffs.

59.     The Uniforms are defective in their design or formulation in that they are not reasonably fit, suitable, or safe for their intended purpose and/or its foreseeable risks exceed the benefits associated with their design and formulation.

60.     At all times material to this action, the Uniforms were not safe and were not suited for the purposes for which Defendants, directly and indirectly, advertised, marketed, and promoted them at the time Defendants designed, manufactured, distributed, and sold the Uniforms and placed the Uniforms in the stream of commerce.

61.     The Uniforms were defective and unreasonably dangerous when they left control of Defendants in one or more of the following manners:

13

a.     The risk associated with wearing the Uniforms far outweighs the utility derived from wearing them;

b.     Defendants failed to provide adequate warnings regarding the hazards associated with wearing the Uniforms;

c.     The Uniforms were defectively designed and unreasonably dangerous in design and composition in that other products could achieve similar results without the risks presented by the Uniforms; and

d.     The Uniforms failed to comply with the implied warranty that the product was safe when used for its intended purpose.

62.    At the time the Uniforms left the control of Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of injuries to the Plaintiffs without impairing the reasonably anticipated or intended function of the Uniforms. These safer alternative designs were economically and technologically feasible, and would have prevented or significantly reduced the risk and amount of injuries to Plaintiffs without substantially impairing the Uniforms' utility.

63.    As a direct and proximate result of Lands' Ends defective design of the Uniforms, Plaintiffs have suffered and/or in the future will suffer personal injuries, pain and suffering, severe emotional distress, property damage, financial or economic loss, including medical services and expenses, lost income and other damages.

## COUNT 3 – MANUFACTURING DEFECT

64.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

65.     The Uniforms manufactured by Lands' End, which Plaintiffs were required to wear during working hours, were not reasonably safe for their intended use and were defective as a matter of law with respect to their manufacture.

66.     As a direct and proximate result of Lands' End's defective manufacturing of the Uniforms, Plaintiffs have suffered and/or in the future will suffer personal injuries, pain and suffering, severe emotional distress, property damage, financial or economic loss, including medical services and expenses, lost income and other damages.

## COUNT 4 – FAILURE TO WARN

67.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

68.     The Uniforms manufactured by Lands' End to be worn by Plaintiffs were not reasonably safe for their intended use and were defective as a matter of law due to their lack of appropriate and necessary warnings.

69.     Defendants had a duty to warn Plaintiffs of the risks and/or defects about which it knew or should have known.

70.     Defendants failed to adequately warn Plaintiffs that the Uniforms were unreasonably dangerous and defective because they could result in severe adverse health effects, including those enumerated in this Complaint.

71.     At all times relevant hereto, Defendants intended the Delta Employees, including Plaintiffs, to wear the Uniforms and knew or should have known that the Uniforms were defective and dangerous.

72.     The Uniforms were used/worn by Plaintiffs in a reasonably anticipated and foreseeable manner, and in the manner for which the Uniforms were intended.

73.     At all relevant times hereto, Defendants were situated in the chain of commerce and transferred, sold, marketed, advertised, or distributed the Uniforms in the regular course of business.

74.     At all times relevant hereto, the Uniforms were in the same, or substantially the same, defective and unreasonably dangerous condition when put to its reasonably anticipated and foreseeable use.

75.     Defendants knew or should have known of the risk of injury from the Uniforms, but failed to provide adequate warning to users/wearers of the product, failed to immediately recall the Uniforms and continued to sell and distribute the Uniforms for use by Delta Employees. As a direct result, the Uniforms manufactured and/or supplied by Defendant were defective due to inadequate post-marketing warnings or instructions.

76.     Had Defendants adequately warned Plaintiffs they would have been alerted to the problem and would have taken steps to avoid the adverse health consequences before they occurred.

77.     As a direct and proximate result of Lands' End's failure to warn as to the allergen and sensitizing properties of the Uniforms, Plaintiffs have suffered and/or in the future will suffer personal injuries, pain and suffering, severe emotional distress, property damage, financial or economic loss, including medical services and expenses, lost income, and other damages.

### COUNT 5 – BREACH OF EXPRESS WARRANTY

78.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

79.     Defendants made assurances to Delta and the Delta Employees that the Uniforms would be safe and comfortable and reasonably fit for their intended purpose and that they were "Guaranteed".

80.     Upon information and belief, Plaintiffs are the intended third-party beneficiaries of Lands' End's warranties because there is a valid and binding contract between Delta and Lands' End, the contract was intended to protect the safety of Delta's Employees who would be required to wear the Uniforms, and the benefit to the Delta Employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Delta Employees if the benefit of the warranty is lost. Consequently, Plaintiffs are in privity with Defendants.

81.     To the extent required under applicable choice of law, Plaintiffs reasonably relied upon Lands' End's express warranties and guarantees that the Uniforms were safe, merchantable, and reasonably fit for their intended purpose.

82.     Defendants breached their express warranties by selling unreasonably dangerous and defective uniforms jeopardizing the health and safety of the Delta Employees.

83.     Plaintiffs notified Lands' End of the breach through their individual efforts to obtain safe replacement uniforms.  Lands' End was on notice of the breach of warranty well before Plaintiffs filed their original Complaint.

84.     As a direct and proximate result of Lands' End's breach of its express warranties, Plaintiffs have suffered personal injuries, pain and suffering, emotional distress, property damage, financial and economic loss, including obligations for medical services and expenses, lost income and other damages.

## COUNT 6 – BREACH OF IMPLIED WARRANTY

85.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

86.     The Lands' End Uniforms are "goods" under the Uniform Commercial Code ("UCC").

87.     Lands' End is a "merchant" under the UCC.

88.     Lands' End impliedly warranted the merchantable quality of the Uniforms and that they were fit for the ordinary purpose for which they were intended.

89.     To the extent required under applicable choice of law, Plaintiffs relied upon Lands' Ends' implied warranties of merchantability in wearing and/or purchasing the Uniforms.

90.     The Uniforms supplied by Defendants breached these implied warranties, jeopardizing the health, safety, and property of Plaintiffs.

91.     As a direct and proximate result of Lands' End's breach of its implied warranties, Plaintiffs have suffered personal injuries, pain and suffering, emotional distress, property damage, financial and economic loss, including obligations for medical services and expenses, lost income and other damages.

## COUNT 7 – VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT ("MMWA") 15 U.S.C. § 2301, ET SEQ.

92.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

93.     Plaintiffs are "consumers" within the meaning of the MMWA.

94.     Lands' End is a "supplier[]" and "warrantor" within the meaning of the MMWA.

95.     The Uniforms are "consumer products" within the meaning of the MMWA.

96.     Defendants' written affirmations of fact, promises, and descriptions as alleged created written and/or implied warranties within the meaning of the MMWA.

97.     Defendants breached these warranties because the Uniforms were not fit for their intended use, were not defect free, and were harmful to Plaintiffs and other Delta Employees.

98.     These defects existed when the Uniforms left Defendants' control.

99.     Despite reasonable opportunity to honor its disclosure and remedy obligations, Lands' End violated the MMWA, causing injury to Plaintiffs.

18

100.     As a direct and proximate result of Lands' End's violation of the MMWA, Plaintiffs have suffered personal injuries, pain and suffering, emotional distress, property damage, financial and economic loss, including obligations for medical services and expenses, lost income and other damages.

## COUNT 8 - INJUNCTIVE RELIEF

101.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

102.     Plaintiffs and the Delta Employees have been, and continue to be, exposed to Lands' Ends' dangerous Uniforms by virtue of their employment with Delta.

103.     As set forth above, Plaintiffs have experienced adverse reactions from the exposure to the Uniforms. Some continue to experience reactions as they wear the Uniforms. Other Delta Employees react to the Uniforms by merely being in their presence.

104.     All Delta Employees are susceptible to experiencing adverse reactions as result of their cumulative exposures to the allergens and sensitizers in and emanating from the Uniforms.

105.     By providing the unsafe Uniforms to the Delta Employees and by failing to promptly recall the Uniforms, Lands' End has exposed the Delta Employees to ongoing and future risks of adverse medical conditions.

106.     Plaintiffs and the Delta Employees have an increased risk of developing other medical conditions, including the triggering of various autoimmune conditions, adverse effects to the endocrine system, and damage to liver function.

107.     As a remedy and to prevent further and continuing injuries to Delta Employees, Lands' End should be ordered to recall all Uniforms that have been issued.

108.    As an additional or alternative remedy, Lands' End should establish and fund a medical monitoring fund in an amount that will assist in diagnosing and treating the adverse health effects experienced by Plaintiffs and Delta Employees as a result of the Uniforms.

109.    By actively monitoring and testing Plaintiffs and Delta Employees, the risk that they will suffer long-term or latent injuries, diseases, or losses due to inadequate treatment will be significantly reduced.

110.    Plaintiffs seek an injunction creating a court-supervised, defense-funded medical monitoring program that will facilitate the screening and diagnosis of Plaintiffs and the Class for medical conditions resulting from their exposure to the Uniforms' allergens and sensitizers.

111.    Plaintiffs and the Class have no adequate remedy at law in that monetary damages alone cannot compensate them for past injuries and losses and/or prevent future injuries and losses.

112.    Without injunctive relief in the form of a recall and/or medical monitoring program, Plaintiffs and the Class will continue to face an unreasonable risk of preventable injury and disability.

## CLASS ALLEGATIONS

113.    The Class Representatives bring this action on behalf of themselves and all other persons similarly situated, pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following class and sub-class:

      a.    All Delta Employees, including flight attendants, gate agents and ramp agents employed by Delta in the United States who presently wear, previously wore, presently work or previously worked in the vicinity of the Passport Plum and red-colored Uniforms manufactured by Lands' End.

      b.    All Delta Employees, including flight attendants, gate agents and ramp agents employed by Delta in the United States who have experienced the bleeding of colors

and/or crocking from the Lands' End Uniforms onto their skin, accessories, other garments or furnishings resulting in property damage.

114.    Excluded from the Class are the following:

a.      Defendants, any entity in which Defendants have a controlling interest, and their legal representatives, officers, directors, employees, assigns, and successors, and

b.      the judge to whom this case is assigned and any member of the judge's immediate family.

115.    **Numerosity:** The members of the Class are so numerous that individual joinder of all members is impracticable. To date, tens of thousands of Delta Employees have worn or been exposed to the unsafe Uniforms, and thousands have lodged complaints with Delta's human resources departments. The Class is believed to compose 64,000 members.

116.    **Commonality & Predominance:** There are common questions of fact and law that predominate over any questions affecting only individual members of the Class. These common issues include:

a.      Whether the Uniforms have caused members of the Class to suffer adverse health reactions;

b.      Whether the Uniforms pose a substantial risk to the Class of causing future adverse health reactions;

c.      Whether the Uniforms bleed and crock resulting in purple or red coloring leaching into Class members' skin, staining their clothing and other possessions, resulting in permanent damage to their possessions that come in contact with the Uniforms.

d.      Whether the conduct of Lands' End was negligent;

e.      Whether the Uniforms are defective in their design or formulation;

f.      Whether the Uniforms are defective in their manufacture;

g.      Whether Lands' End provided adequate warnings to the Class regarding the hazards associated with the Uniforms;

h.      Whether Lands' End expressly or impliedly warranted the safety of the Uniforms;

i.      Whether Lands' End should be required to recall all defective Uniforms; and

j.      Whether Lands' End should be required to establish a medical monitoring protocol to ensure that the Class receives routine medical screening for future illness caused by the Uniforms.

117.   **Typicality**: Class Representatives' claims are typical of the claims of the other Class members because, among other things, all Class members are at risk for short and long-term injuries resulting from exposure to the Uniforms. The claims of Class Representatives and the Class all arise from the same wrongful practices and conduct, and they seek relief on the same legal theories.

118.   **Adequacy of Representation:** Class Representatives are adequate representatives of the Class because their interests do not conflict with the interests of other members of the Class they seek to represent. They have retained competent counsel experienced in complex and class action litigation who intend to prosecute this action vigorously. Class members' interests will be fairly and adequately protected by Class Representatives and their counsel.

119.   **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of the propriety of injunctive relief. Individual litigation of whether injunctive relief is warranted on a class-member-by-class-member basis is neither economically feasible nor procedurally practicable.

120.    **Declaratory and Injunctive Relief:** Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and members of the Class, thereby making appropriate final injunctive relief as described herein.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs on behalf of themselves and the Class, pray for judgment against Defendants for the following relief:

i.      All recoverable damages sustained by Plaintiffs;

ii.     Appropriate injunctive relief to which Plaintiffs and other members of the Class are entitled, including a recall of the Uniforms and ongoing monitoring of Plaintiffs' health;

iii.    Certification of the putative Class and sub-class; appointing the putative Class Representatives as class representatives; and naming Plaintiffs' counsel as class counsel of the following class and sub-class:

a.      All Delta Employees including flight attendants, gate agents and ramp agents employed by Delta in the United States who presently wear, previously wore, presently work or previously worked in the vicinity of the Passport Plum and red-colored Uniforms manufactured by Lands' End.

b.      All Delta Employees, including flight attendants, gate agents and ramp agents employed by Delta in the United States who have experienced the bleeding of colors and/or crocking from the Lands' End Uniforms onto their skin, accessories, other garments or furnishings resulting in property damage.

iv.     Pre-judgment and post-judgment interest as allowed by law;

v.      Payment of reasonable attorneys' fees and costs as may be allowable under law; and

vi.  Such other relief as the Court may deem just and proper.

Respectfully submitted this 11th day of May, 2020.

**TERRELL HOGAN YEGELWEL, P.A.**

*/s/ Bruce A. Maxwell*
Bruce A. Maxwell, Esq. (Admitted to the
U.S. Supreme Court: 03/29/1993)
Email: maxwell@terrellhogan.com
Bradley G. Bodiford, Esq. (pro hac vice)
Email: bodiford@terrellhogan.com
233 E. Bay St., 8th Floor
Jacksonville, Florida 32202
(904) 632-2424

**GIRARDI KEESE**

/s/ *John K. Courtney*
**John K. Courtney**
Appearing Pro Hac Vice
Girardi & Keese
1126 Wilshire Boulevard
Los Angeles, CA 90017
213-241-2322
jcourtney@girardikeese.com

/s/ *Keith D. Griffin*
**Keith D. Griffin**
Appearing Pro Hac Vice
Girardi & Keese
1126 Wilshire Boulevard
Los Angeles, CA 90017
213-241-2322
kgriffin@girardikeese.com

*Attorneys for Plaintiff Stephanie Andrews, et al.*